Argued October 19, affirmed November 15, 1927.

## ROY E. DE ARMOND ET AL. *v.* F. U. MOON ET AL.

(260 Pac. 1100.)

**Logs and Logging—Purchaser of Land Taking Subject to Sale of
Timber to Defendants Held not Entitled to Enjoin Placing of
Dams in Stream to Facilitate Transporting of Logs (Or. L.,
§ 799, subd. 4).**

  1. Under Section 799, subdivision 4, Or. L., plaintiffs in possession
of land under contract of purchase, which was subject to vendors'
previous sale of timber on the land to defendants' principal, *held* not
entitled to enjoin defendants from placing and maintaining dams in
the stream running through the land to facilitate floating of logs
down the stream, which was navigable for logging purposes during
ordinary high water, in absence of evidence that method was un-
reasonable or caused more damage than some other method would
have caused, and it was immaterial whether it was the most eco-
nomical method as respects defendants.

**Injunction—Injunction will Never be Granted Except on Clear and
Convincing Proof.**

  2. Injunction is an extraordinary remedy, and will never be
granted except on clear and convincing proof.

Injunctions, 32 C. J., p. 33, n. 34, p. 49, n. 67, p. 50, n. 75, p.
350, n. 63, 69, p. 351, n. 79.
Logs and Logging, 38 C. J., p. 175, n. 89, 92, 2, p. 176, n. 8, 9.
Waters, 40 Cyc., p. 568, n. 26, p. 569, n. 27.

From Coos: JOHN C. KENDALL, Judge.

Department 1.

Plaintiffs instituted this suit to enjoin defendants
from placing and maintaining dams, locally called
deadheads, in the stream passing diagonally through
plaintiffs' premises. Plaintiffs are in possession of
200 acres of land under a contract of purchase.
Their vendors sold the timber on said tract prior to
entering into the contract with plaintiffs to sell the
land to them. By the terms of the contract and deed
between plaintiffs and their vendors plaintiffs hold

their interest subject to the sale of the timber to defendants' principal. Defendants' principal had 10 years, that is, until February 28, 1930, in which to cut and remove the timber from said premises. Plaintiffs do not question the right of defendants to cut and remove the timber but seek by this litigation to prevent defendants from using deadheads for that purpose. Plaintiffs claim that by placing deadheads in the stream the water is backed up, the banks softened and made subject to caving and washing to the damage of plaintiffs' land. They also contend that the stream is likely to wash around the ends of the temporary dams and thereby cause the banks to erode. Defendants contend that they are operating in the usual manner and are doing no unnecessary damage to plaintiffs' land. Defendants claim that less damage is being done to the premises belonging to plaintiffs by placing deadheads in the stream as they are doing than otherwise to move the timber because fewer landings are required on the banks, the logs can be placed in better shape to go out with less water, and plaintiffs' land is cut up less by the operation of their tractor in getting the logs from the land to the river bank. But little difference exists between the parties in the law applicable. The main question to be answered is one of fact.   Affirmed.

For appellants there was a brief over the names of *Messrs. Peck & Brand* and *Mr. J. F. Anderson,* with an oral argument by *Mr. Arthur K. Peck.*

For respondents there was a brief over the name of *Messrs. Goss & Murphy,* with an oral argument by *Mr. H. S. Murphy.*

COSHOW, J.—The contract for the sale of the timber under which defendants are operating does not specify the manner of moving the logs from the premises. Any reasonable or workmanlike method which does no unnecessary injury to the land or damage to plaintiffs may be used by defendants.

Both plaintiffs and defendants rely upon the rules announced in *Kamm* v. *Normand,* 50 Or. 9 (91 Pac. 448, 126 Am. St. Rep. 698, 11 L. R. A. (N. S.) 290). Plaintiffs claim the benefit of this language on page 14 of the official report:

"But a stream which is not such a highway cannot be made one by the use of dams or other artificial means, without first acquiring the rights of riparian proprietors: 1 Farnham, Waters, § 139. Nor can a stream, navigable in its natural condition at certain stages of the water, be made so at other times by artificial means, such as flooding and the like. No one has a right to store water, and then suddenly release the accumulation, and thus increase the natural volume of the stream, and overflow, injure or wash the adjoining banks, or otherwise interfere with the rights of riparian owners. The riparian proprietor is entitled to the enjoyment of the natural flow of the stream with no burden or hindrance imposed by artificial means." (Long list of authorities cited.)

Other authorities cited by plaintiffs include: *Stephens* v. *City of Eugene,* 90 Or. 167 (175 Pac. 855); *Hansen* v. *Crouch,* 98 Or. 141 (193 Pac. 454); *Logan* v. *Spaulding Logging Co.,* 100 Or. 731, 736 (190 Pac. 349); *Mendenhall* v. *Harrisburg Water Co.,* 27 Or. 38, 44 (39 Pac. 399); *Hallock* v. *Suitor,* 37 Or. 9, 12 (60 Pac. 384); *Flinn* v. *Vaughn,* 55 Or. 372 (106 Pac. 642).

These authorities support the contention of plaintiffs, but they are not applicable to the instant case. In all those cases the persons seeking injunctive relief sustained no contractual relations with the parties using the stream. Plaintiffs are bound by the contract to permit defendants to remove the timber from plaintiffs' premises. Defendants have an easement or license to enter upon plaintiffs' land and to cut and remove the timber. Unless the manner in which defendants are operating is doing plaintiffs unnecessary injury, defendants are not trespassing.

Defendants rely upon this rule announced in *Kamm* v. *Normand,* above:

"Dams, dikes, embankments and the like may be constructed in or along floatable streams to facilitate their use (*Union Power Co.* v. *Lichty,* 42 Or. 563, 71 Pac. 1044), but not to the extent of injuring the riparian proprietors by retarding the flow of the water or sending it down in increased volumes to his injury or at times when the stream would not otherwise be navigable." Page 15 in official report.

The stream involved is the North Fork of the Coquille River. It is stipulated that it is navigable for logging purposes during ordinary high water.

1. Defendants are not storing the water for the purpose of sending it on down the stream in increased volume. Plaintiffs are not lower riparian owners. Defendants are using deadheads for the purpose of storing enough water in the stream on plaintiffs' premises to facilitate floating the logs in order to place them in the stream so that the logs will go out with the first freshet. Defendants are not using deadheads for the purpose of floating the logs down stream. They are not using deadheads to make the stream navigable for logs at a stage of water natu-

rally unnavigable.    Defendants have a right to utilize such means to facilitate the transportation of their logs by water to market: *Kamm* v. *Normand,* above.

Plaintiffs could with as much reason complain because defendants were cutting up their premises in transporting the logs to the river or other highway. But for the contract allowing defendants to enter upon said premises to cut and remove the timber, defendants would not be allowed to haul logs across plaintiffs' land to the river.    But for that same contract defendants would not be permitted to construct a temporary dam in the river on plaintiffs' premises to facilitate the transportation of the logs from those premises.

2. Injunction is an extraordinary remedy.    It will never be granted, except upon clear and convincing proof.    Plaintiffs have not adduced such a preponderance of the evidence as to justify this court in enjoining the defendants from using the temporary dam or from placing other dams in a similar manner for the purpose of removing the logs from plaintiffs' premises.    The evidence convinces us that the use of a deadhead, as defendants are using it, is common in that section of the state.    The evidence as to damage is speculative, uncertain and unsatisfactory.    Defendants cannot cut and remove the timber from plaintiffs' premises without doing more or less damage thereto.    It is presumed that such damages were contemplated in fixing the price for the sale of the timber.    We are convinced that defendants are removing the logs in a reasonable manner without unnecessary damage to plaintiffs.

It is immaterial to plaintiffs whether or not defendants have adopted the most reasonable way to remove the logs: Or. L., § 799, subd. 4.    The logs

must be removed entirely at the expense of defendants. Plaintiffs are not injured if defendants have adopted a more expensive method for removing the logs than some other way might have been. Plaintiffs can complain only if the method employed by defendants was causing plaintiffs more damage than some other method would have caused them. Plaintiffs have failed to prove that to our satisfaction.

For these reasons the decree is affirmed.

AFFIRMED.

RAND, C. J., and McBRIDE and ROSSMAN, JJ., concur.