Argued November 2; modified December 20, 1938; rehearing denied
January 17, 1939

LAURANCE ET AL. *v.* TUCKER

(85 P. (2d) 374)

476

*Blaine Hallock*, of Baker (Hallock, Donald & Banta, of Baker, on the brief), for appellant.

*Earl B. Moore*, of John Day, and *A. A. Smith*, of Baker (Heilner, Smith, Grant & Fuchs, of Baker, on the brief), for respondents.

RAND, J. This is a suit to restrain the defendant from maintaining a drain over plaintiffs' premises in Prairie City, Oregon, to carry away the overflow of a septic tank and the waste water and sewage from a house on premises adjoining those of the plaintiffs, upon which said premises one of the plaintiffs and the defendant reside respectively.

The complaint was filed on August 5, 1935, and on November 29, 1935, the defendant filed a motion to make it more definite and certain. The motion was overruled and the defendant was allowed 25 days to answer. The decree appealed from was entered on March 21, 1938, and, in and by its terms, the second amended answer was, on plaintiffs' motion, struck from the files and a decree was entered holding that the defendant was in default and granting to the plaintiffs the relief prayed for in the complaint but without the allowance of any damages.

During the interim between November 29, 1935, or a few days thereafter, and March 21, 1938, nothing seems to have been done in the suit except the filing of some form of answer against which some form of demurrer or motion was sustained.

The record presented here is so incomplete that it would be impossible for this court to determine the correctness of the rulings made prior to that made at the time when the decree appealed from was entered, as we would have the right to do, if properly presented, under section 7-512, Oregon Code 1930, which provides that, upon appeal, the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment or decree appealed from. Again, our difficulties are augmented by the fact that this record presents three abstracts of record, namely: Appellant's abstract of record, respondents' supplemental abstract of record, and appellant's supplemental abstract of record. Our statute and rules contemplate that in no case upon a single appeal shall more than two abstracts of record be filed. There is also in the record what purports to have been statements made in open court by defendant's attorney that the defendant was relying only upon proceedings had and an order made in the county court, pursuant to section 34-101 to section 34-111, Oregon Code 1930, as a justification for the maintenance of the drain by defendant over plaintiffs' premises. These statements, however, if made, were not incorporated in any order of the circuit court or in any other manner sufficient to justify any action upon said statements by us, and, so far as this appeal is concerned, are matters outside the record and, hence, we shall confine our consideration to the second amended answer against which the motion to strike was made and sustained.

Referring now to said second amended answer, it admits that the plaintiffs are the owners of the property alleged in the complaint and occupy the same as a place of abode; that the defendant is the owner of the adjoining premises, and that she resides thereon. Except for these admissions, it denies every other allegation contained in the complaint "except as herein expressly admitted or alleged." It then sets up three separate affirmative defenses and, in these defenses, it alleges all the facts stated in the complaint except those alleging that the drain was being wrongfully maintained by the defendant and that plaintiffs had been damaged thereby.

The first affirmative defense alleges a right by prescription to maintain the drain and also some facts tending to show that the damage claimed by the plaintiffs in their complaint was caused, in part if not wholly, by the acts of Prairie City in turning water over a part of said premises by an improvement made in one of its streets. This, of course, could afford no justification for the acts complained of in the complaint although it might tend to reduce the damages claimed. However, the court, by its decree, awarded no damages to the plaintiffs; hence, the matter is not material upon this appeal.

In substance, this affirmative answer alleges that in the year 1919, defendant, or her predecessors in interest, installed a pipe line to drain the overflow of a septic tank, bath and the waste waters from the basement of her house and also constructed a "sump or sink-box" and a ditch. It then alleges that: "at said time and in order to facilitate a more adequate drainage from said dominent tenement, as well as to accomplish better drainage of said servient tenement defendant or her predecessors in interest constructed from said

sump or sink-box and out and along said servient tenement in a general southwesterly direction a ditch sufficient in capacity to carry said drainage and to accomplish said purposes all said work having been accomplished to the knowledge of plaintiffs and their predecessors in interest''. It then alleges that ever since said year 1919, defendant and her predecessors in interest ''have employed and used said sump or sink-box and said ditch for the drainage of said dominent tenement in a continuous, exclusive, open, hostile and adverse manner against all of the world and particularly against plaintiffs and their predecessors in interest and have thus acquired by prescription a perpetual easement and right of way over and upon said servient tenement for said purposes.''

It is, of course, unnecessary to point out that no person can justify a trespass upon another person's property by showing that such trespass resulted in benefit to the owner of the property upon whose property the trespass was committed. We think, however, that the other allegations contained in the answer that the defendant has been in the open, notorious, hostile and exclusive possession of the space occupied by the drain would, if established to have been done under a claim of ownership and continuously for a period of 10 years, be sufficient to create title by prescription. However, that would not be the case if the acts complained of constituted a public nuisance or affected the public, or any considerable part of it, injuriously, since the statute of limitations does not run against a public nuisance no matter how long continued. If, however, the nuisance was a private nuisance and affected only the owner of the premises trespassed upon, it would seem that the open, notorious and exclusive possession of the land covered by the ditch continuously for a

period of 10 years under a claim of ownership would be sufficient to constitute adverse user as to the ground so occupied. These questions, however, are not now before us for the reason that there has been no testimony taken in the case, and no stipulation of facts filed, and are pointed out merely because we think that, stripped of its unnecessary verbiage, this affirmative answer, if it can be established by proof, would constitute a good defense in this suit. At most, it was a defective statement of a good defense and the objection, if any, should have been taken by demurrer and not by a motion to strike.

■■ The other two defenses were, we think, properly stricken. The second affirmative defense reiterates the statement that the trespass complained of resulted in a benefit to the plaintiffs and then alleges that the acts complained of were all done ''with the knowledge and acquiescence of plaintiffs and to their substantial benefit, as above alleged'', and ''that because plaintiffs so possessing said knowledge and without any objection or complaint whatsoever permitted defendant, relying upon said knowledge and consent, and at substantial expense, to purchase and install said tile and to accomplish said benefit in behalf of plaintiffs, they, the said plaintiffs, are and in good conscience should be estopped from maintaining the suit''. For a person claiming a right by prescription, those allegations are hardly consistent with such claim, for acts done by permission never ripen into title by adverse user. In the absence of some agreement, the acts done by the defendant, as alleged in her second affirmative answer, even if done with plaintiffs' consent, would not create an irrevocable license: *Falls City Lumber Co. v. Watkins*, 53 Or. 212 (99 P. 884), nor are sufficient facts alleged to create an estoppel.

██ The third affirmative defense sets up a proceeding brought by the defendant against the plaintiffs in the county court to obtain a right of way for the construction and maintenance of this drainage ditch and an order there made pursuant to the provisions of sections 34-101 to 34-111, Oregon Code 1930. The circuit court properly held that the order of the county court was so indefinite and uncertain as to the location of the drainage ditch that the order was void. We concur in that holding. But, for a more substantial reason, we hold that the proceedings brought in the county court and the order there made were void and of no effect because the facts of the case did not bring it within the purview of the act. In the second amended answer, it is alleged that the drainage for which the right of way was sought was merely to take care of and carry away the overflow from defendant's septic tank and the waste water from her house. This negatives the fact that defendant's premises required drainage except for those particular purposes. It was the intent of the act under which the proceedings were brought in the county court to provide drainage for land when necessary because of some natural condition existing upon the land itself and not a condition which the landowner has himself created by artificial means, such as those involved here. The case, therefore, was not one over which the county court could take jurisdiction. So far as applicable, under the facts alleged, to the defendant when acting in her individual capacity, the act reads as follows:

"When any person * * * owning land which requires draining, * * * and objection is made by the owners of adjacent land to the construction thereon or thereover of necessary means of drainage, such person * * * may make application in writing to the

county court in which such land  *  *  *  is situated, for the right of way or privilege to cut or dig or construct sufficient means of drainage over said adjacent land;  *  *  *".

Section 34-101, Oregon Code 1930.

The remaining provisions of this section apply to flood waters from some natural stream and have no application to the facts involved here.

In 2 Farnham on Waters and Water Rights, section 179, the author says:

"*  *  *  one landowner has no right of way over his neighbor's land for a drainage ditch regardless of the necessities. And the government has no more authority in such a matter than the individual himself. It cannot authorize the construction of a drainage ditch under the power of eminent domain over the land of a private citizen for the benefit of another citizen, nor can it authorize such right of way when it furthers private interests only. As said in Coster v. Tide Water Co., (18 N. J. Eq. 54), taking the property of one man and giving it to another is not making a law or rule of action; it is not legislation, it is simply robbery."

Following this, he says:

"If the drain is intended not for the benefit of an individual, but for the general public welfare, there is no doubt that the power of eminent domain may be exercised to secure a right of way for it. The power of eminent domain is a prerogative power, held by the sovereign for the express purpose of enabling it to resume possession of property which is needed for the public good. When, therefore, a drain is needed for the public good, this power is properly called into activity; and under it the right of way can be acquired. And it is held that any public benefit, such as the improvement of the public health or of public highways or the redemption of large tracts of waste lands or any other public utility, is sufficient to authorize the exercise of the power. As said in Thomas v. County Comrs., (Ohio N.

P. 449), it is not sufficient that the ditch will drain the lands adjacent to it or enable the owners of adjacent lands to raise larger and better crops, but the public health, convenience or welfare must in some way suffer for want of the ditch. The public convenience may be subserved by the fact that in times of freshets water which overflows turnpikes and bridges will be carried away more rapidly, and with less injury to such roads and bridges. If the construction of the ditch will lead to a more healthful community and a more prosperous neighborhood, and will result in the reclamation or bettering of a considerable quantity of low, wet or swamp lands, or drain stagnant ponds, thereby improving the public highways of the vicinity and health of the community, and increasing the value of the land of the surrounding country of the proposed ditch, the ditch will be conducive to the public health, convenience, or welfare. It is not necessary that the whole public should be interested in the construction of the improvement. It is sufficient if the people of the neighborhood or vicinity of the improvement will be benefited.''

Clearly, in the absence of a grant, no person has the right to dump the overflow from a septic tank, or the waste water from his house, upon the premises of an adjoining landowner, and an act of the legislature authorizing that to be done would be unconstitutional, but under the circumstances stated by Mr. Farnham, or those stated by this court in *Seely v. Sebastian*, 4 Or. 25, 29, the act is constitutional. In that case, the court said:

''* * * By public use is meant for the use of many or where the public is interested.

''Suppose a large marsh is situated in such a manner that the miasma arising therefrom affects the public health of a large number of people. To provide for its drainage would be a matter of public concern, and could be regulated by law. So if draining of large swamps would add largely to the area of valuable lands in the state and increase its resources, it would be the proper subject of legislation; and it has been the practice of

484

all states to legislate on this subject, and encourage the drainage of these lands, both as contributing to the public health and agricultural advancement of the country."

In order to establish title by adverse possession, it is necessary to allege and establish by clear and positive proof an actual, open, notorious, exclusive and hostile possession for the full statutory period, and, generally, it is necessary to allege and prove that the possession was taken and held under a claim of ownership or claim of right. The mere fact that one is in possession of land, no matter how long continued, will not bar a recovery by the true owner thereof, unless the occupant asserts an exclusive ownership in himself, for, in the absence of such a claim, the law will presume his possession to be in subservience to the legal title. 1 R. C. L., Title: Adverse Possession, section 18, pp. 705, 706.

As before pointed out, there was no allegation in the first affirmative defense, set up in the second amended answer, that defendant took and continued in possession under a claim of ownership. If that statement had been included, it would have stated a good defense. It was, therefore, a defective statement of a good defense and was subject to demurrer. No demurrer, however, was interposed but a motion to strike on the ground that it was sham, frivolous and irrelevant was made and sustained. We do not think the objection to its sufficiency could be raised in that manner and, therefore, as to that particular affirmative defense, the striking of the whole answer was erroneous. Nor do we think that the fact that there was an inconsistency between the first and second affirmative defense justified the court in striking the whole answer. Because there

was such inconsistency, we think the court should have required the defendant to elect upon which of the two defenses she sought to rely.

Since, as stated, neither the second nor the third affirmative answer stated a good defense and although objection to them was made by a motion to strike rather than by demurrer, no substantial error was committed in sustaining the motion as to them.

For the reasons stated, the cause will be remanded to the court below for the sole purpose of having determined the question of whether or not the defendant has acquired title by adverse possession to that part of plaintiffs' premises covered by defendant's drain. In all other respects, the action of the trial court is affirmed; neither party to recover costs upon this appeal.

Modified and remanded.

ROSSMAN and KELLY, JJ., not sitting.